## CHARLES LOERTSCHER, PROSECUTOR, v. MAYOR AND ALDERMEN OF JERSEY CITY.

Submitted March 20, 1913—Decided June 16, 1913.

The act entitled "An act concerning the granting of licenses for shows, circuses and athletic exhibitions in cities" (*Pamph. L.* 1890, *p.* 360; *Comp. Stat., p.* 658) does not authorize cities to pass ordinances for the licensing of balls or dances of a social character.

On *certiorari* to a conviction of violating a municipal ordinance.

Before Justices TRENCHARD, PARKER and VOORHEES.

For the prosecutor, *John Milton.*

For the defendant, *James J. Murphy.*

The opinion of the court was delivered by

PARKER, J.    The conviction was justified by the provisions of the ordinance, but the prosecutor claims that the ordinance itself is not supported by the statute on which it rests, and that the statute itself is unconstitutional.    It is entitled "An act concerning the granting of licenses for shows, circuses and athletic exhibitions in cities" (*Pamph. L.* 1890, *p.* 360; *Comp. Stat., p.* 658), and provides that cities may pass ordinances "to license, regulate and prohibit traveling and other shows, circuses and menageries, also athletic and scientific exhibitions, also theatrical and variety performances and plays, also plays, singing or performances of any kind in any place where liquors are sold,"    *    *    *    and authorizes as a fee "for a license to permit plays, singing or performances of any kind in any place where liquors are sold, the sum of not exceeding and at the rate of $25 a month."

In reliance on this act (no other legislative authority is invoked) the city of Jersey City in 1912 passed a supplement to an ordinance of 1890 entitled "A supplement to an ordinance entitled 'An ordinance concerning the licensing of traveling shows, circuses and athletic exhibitions,' approved April 21st, 1890." The body of this supplemental ordinance, however, deals with a different matter, for it forbids "any person or persons to hold in any place where liquors are sold any entertainment, ball or dance, either with or without music, without first obtaining a license for that purpose from the board of aldermen." Section 2 provides an annual fee of $300, the term to end on July 1st of each year. By section 3 no license is effective until the applicant files a bond with sureties in the penal sum of $500, conditioned that the license shall not be assigned or sublet without the consent of the board, and that the bond shall be forfeited if any violation of any law of this state or of any ordinance of the city shall take place in the hall, room or building for which such license shall be given.

The variance between the title and body of the ordinance seems not to affect its validity. *Hershoff* v. *Treasurer of Beverly,* 16 *Vroom* 288. It is obvious that the supplementary ordinance is aimed, not at traveling shows and athletic exhibitions, but at balls and dances in public halls adjoining liquor saloons. Such a ball or dance was the basis of the conviction in this case. It was the "inaugural ball" of a named association, and was held at a hall suitable for such entertainments. There was apparently no stage performance, no vaudeville, no athletics or professional dancing, but simply what is commonly known as a ball or dance, of a purely social character.

That the licensing and regulation of places of this kind, and supervison of the dances held therein, are advisable, if not necessary, may be freely conceded. Our present concern, however, is with the two questions—*first,* whether the ordinance is within the power of the city as laid down in the statute, and *second,* if so, whether that statute is itself valid.

We are quite clear that the statute did not confer power on Jersey City to enact this ordinance. As has been already

pointed out, the title of the act speaks of shows, circuses and athletic exhibitions. Plainly, a ball or dance is not seriously a circus or athletic exhibition; and quite as plainly, we think, it is not a show, which necessarily implies something to be shown, and spectators to look at it. In Webster's International Dictionary a show is defined in part as "a display; a spectacle; or an exhibition." The legislature no doubt intended to use the word in a sense broad enough to include theatrical and vaudeville entertainments, but, on the principle of *noscitur a sociis,* dancing parties were not meant to be included.

The body of the act being controlled by its title, if the words "performances of any kind," which are the only words relied on to support the ordinance, are broader than the word "shows," the act is ineffective as to such broader meaning. But we do not need to invoke this constitutional principle, for we consider that a performance in the sense of the statute is such a performance as may be fairly called a show, and that a ball or dance is not of this character.

We conclude, then, that an ordinance to license and regulate balls and dances of the ordinary character cannot be rested upon the act of 1890, and it is therefore unnecessary to discuss the other points raised; but it will do no harm to observe that the provision for an annual license fee of $300 for a term expiring July 1st, no matter when the license is granted—perhaps a month or so earlier—may be a very different matter from a fee of $25 per month; and that the exaction of a bond is not mentioned in the statute.

Prosecutor further claims that the act is unconstitutional, as being plainly a revenue measure without expressing that object in its title. *Bolles* v. *Newark,* 52 *Vroom* 184. The result we have reached makes it unnecessary to decide this point.

The conviction brought up will be set aside, with costs.